IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Boyd Mize,                              )
    Plaintiff,                      )
                                        )
v.                                      )    1:10cv1124 (GBL/TRJ)
                                        )
Dr. Stephen M. Herrick, et al.,         )
    Defendants.                     )

MEMORANDUM OPINION

This Matter comes before the Court on Motions to Dismiss or in the Alternative, Motions for Summary Judgment filed separately by defendants Dr. Mark Militana and Dr. Stephen Herrick. The lawsuit was initiated pursuant to 42 U.S.C. § 1983 by Boyd Mize, acting pro se, who is civilly committed to the Virginia Center for Behavioral Rehabilitation ("VCBR"). Plaintiff alleges that he suffers cruel and unusual punishment in the form of deliberate indifference to his serious medical needs in violation of the Eighth Amendment, because the non-narcotic pain medication he is prescribed is inadequate to ease his chronic back pain. Defendants have submitted memoranda of law and exhibits in support of their positions, and provided plaintiff with notice and the opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). In response, plaintiff filed a Motion to Submit Material Evidence in Support of Petitioner's Case, which will be granted, as well as a "return response" to defendants' motions. For the reasons which follow, defendants' Motions to Dismiss will be denied, their Motions for Summary Judgment will be granted, and summary final judgment will be entered in their favor. Also pending are plaintiff's Motion to Appoint Counsel, which will be denied, and defendant Dr. Militana's Motion for Extension of

1

Time to File Response, which will be dismissed as moot.

## I. Background

The following material facts are uncontested. Plaintiff was civilly committed to VCBR on June 6, 2006, after he was found to be a sexually violent predator by the Circuit Court for Rockingham County, Virginia. According to plaintiff, prior to his commitment he was receiving a "standard regimen" of pain medication consisting of Oxycodone as the result of a spinal injury and nerve damage. Plaintiff was first seen by Dr. Militana, who provides medical services at VCBR, on May 3, 2010, at which time plaintiff was receiving Oxycontin for his back pain. Dr. Militana had concerns regarding plaintiff's medication regimen "due to the fact that Oxycontin is highly addictive and long term use poses significant risk." Militana Aff. ¶ 2. Dr. Militana therefore decreased plaintiff's Oxycontin and introduced Neurontin and Dolobid into his medication regimen, and scheduled plaintiff for a follow-up. Id.  At the follow-up on June 2, 2010, plaintiff's medications were adjusted again, and he was referred to Dr. Ward, a neurosurgeon at the Medical College of Virginia ("MCV"). Militana Aff. ¶ 3. At another appointment five days later, plaintiff complained of insomnia, and Dr. Militana prescribed Ambien. Militana Aff. ¶ 4.

One month later, on July 7, 2010, plaintiff's medications were adjusted again pursuant to his request. Militana Aff. ¶ 5. Also on July 7, 2010, Medical Director Dr. Ramesh Chaudry sent the following e-mail to several recipients, including both defendants in this lawsuit:

> Mr. Mize has been assessed numerous times for his c/o low back pain. Objective pain assessment suggests exaggeration of his pain symptoms and narcotics seeking behaviors. His MRI of Lumbar Spine reads, '**Mild** diffuse disc herniation **without** lateralization or stenosis' suggesting a milder condition. VCBR internist, Dr. Militana, currently follows him and has been helping him to taper down his opoids use. Mr. Mize still remains on four different types of pain

> meds and muscle relaxants, including once daily use of oxycontin (percogesic-three times a day, cymbalta- twice a day, zanaflex-three times a day and oxycontin-once daily).
>
> I had met with Mr. Mize earlier today. He requested his wheel-chair replacement and that was done. He continues to complain of ongoing pain and his need for more narcotics. He also added, 'Under eighth amendments, if VCBR can not meet my medical needs within the facility, my attorney can get me out of VCBR to continue my medical care on the outside.' He is to be seen by Dr. Militana on Friday, July 9 for f/up for his pain management. He is also scheduled for a Neurosurgery tele consult with Dr. Ward (MCV) on 7/28/10.

On July 26, 2010, Dr. Militana had a discussion with plaintiff outlining the risks and harmful effects of long-term use of Oxycontin. Militana Aff. ¶ 6. Plaintiff was seen again on August 9, the medication Trazadone was added to his regimen, and an MRI of his lumbar spine was ordered. Militana Aff. ¶ 7. On August 21, plaintiff was referred to MCV neurosurgery telemedicine. Militana Aff. ¶ 8. Plaintiff had additional medication adjustments consisting of the addition of Flexeril and Nubain on August 23 and 27. Militana Aff. ¶ 9.

Throughout September, 2010, plaintiff continued to receive ongoing care. On September 10, plaintiff was referred to the MCV Pain Management Clinic, although the referral had to be cancelled on September 14 due to no availability. Militana Aff. ¶ 10. On September 14, plaintiff was evaluated by nursing staff when he complained of pain, but he refused the pain medication he was offered. Militana Aff. ¶ 11. On September 20, plaintiff was seen by Dr. Militana and stated that he was doing a little better. Militana Aff. ¶ 12. Plaintiff was seen again on September 27 and requested a power wheelchair, but Dr. Militana explained that they would await the recommendation from MCV neurosurgery for guidance in controlling plaintiff's pain symptoms. Militana Aff. ¶ 13.

On October 8, 2010, plaintiff was seen by Dr. Militana for a follow-up. His medications

were adjusted to include Neurontin, and his MRI results were discussed. Militana Aff. ¶ 14. On October 20, plaintiff's medications were adjusted to include Vicodin, and he again requested Oxycodone. Dr. Militana again explained that he would not prescribe Oxycodone due to his opinion as a prescriber that the risks outweighed the benefits, but plaintiff stated that only Oxycodone would help his pain. Militana Aff. ¶ 15. At another follow-up on October 26, plaintiff yet again requested Oxycodone, and Dr. Militana again explained that Oxycodone has a high risk of abuse potential. Militana Aff. ¶ 16.

Plaintiff was seen again on November 1, 2010, and stated that his medications were not helping him. Nonetheless, plaintiff was "very reluctant" for Dr. Militana to discontinue the medications. Plaintiff's medications were adjusted to include Ambien, Trazadone and Lyrica, and plaintiff continued to state that the only thing that would work for him was Oxycodone. Militana Aff. ¶ 17. At additional follow-ups on November 15, 16, and 29 and December 3, plaintiff's medications were adjusted to incorporate Stadol injections as well as Cymbalta and Flexeril in efforts to address plaintiff's complaints of pain. Militana Aff. ¶ 19.

At a follow-up on December 17, 2010, plaintiff requested that the Vicodin and Lyrica be discontinued. His medications were adjusted, he was referred to Dr. Khan at the Virginia Spine Institute, and an egg crate mattress was ordered to promote comfort while plaintiff slept. Militana Aff. ¶ 19. Plaintiff was seen again for another medication adjustment on December 30, and Naprosyn, Ultram, and Medrol dose packs were introduced. Militana Aff. ¶ 20.

Plaintiff had another follow-up visit on January 10, 2011, at which he continued to insist on Oxycodone for pain relief. Militana Aff. ¶ 21. Plaintiff was seen again on January 19, and his medications were adjusted. Militana Aff. ¶ 22. At another appointment on January 21, Dr. Khan's recommendations were discussed with plaintiff. Plaintiff was referred to physical

therapy, and Celebrex was added to his medication regimen. Militana Aff. ¶ 23. When plaintiff was seen again on January 28, he and Dr. Militana discussed pain management and a return visit to Dr. Kahn. Militana Aff. ¶ 24.

Plaintiff visited Dr. Militana on February 7 and 23 for additional medication adjustments. Plaintiff requested that Vicodin be restarted, and Vicodin was ordered. Militana Aff. ¶ 25. On March 9, plaintiff was seen for a follow-up to an epidural injection he received at Dr. Kahn's office. Militana Aff. ¶ 26. Thereafter, when plaintiff was seen by Dr. Militana on April 6, 8, 13, 18, 22 and 25, and on May 2 and 6, he made no mention of back pain. Militana Aff. ¶ 27.

On May 8, 2011, plaintiff was seen by Dr. Militana and Dr. Chaudry, the Medical Director, regarding his ongoing complaint of back pain. Plaintiff again insisted on being placed back on Oxycodone, and it was explained to him that neurosurgeon Dr. Ward did not recommend long-term use of narcotics. The meeting lasted for about an hour, during which plaintiff continued to argue and debate with the doctors, who did not detect any signs of acute distress. Militana Aff. ¶ 28.

Dr. Militana saw plaintiff on June 10, 2011, to discuss a myleogram procedure, and plaintiff voiced no complaints. Militana Aff. ¶ 29. Plaintiff was seen by the psychiatry unit on June 20, and it was documented that he was not complaining of pain at that time. Militana Aff. ¶ 30. However, when plaintiff saw Dr. Militana on July 11, plaintiff again complained of chronic back pain. Plaintiff's physical exam was unremarkable, his MRI results were discussed, and his medications were adjusted. Plaintiff was referred back to Dr. Ward for evaluation of his MRI results and possible surgery. Militana Aff. ¶ 31. Plaintiff was seen for a follow-up on July 18, and stated that the pain medications were helping. Militana Aff. ¶ 32. When plaintiff was seen on July 22 regarding his diabetes, he voiced no complaint of pain. Militana Aff. ¶ 33. On July

29, plaintiff was seen for his back pain, and he stated that his medications were not helping. Dr. Militana again explained to plaintiff that as a prescriber he would not increase plaintiff's narcotic medication, and stated that they would await Dr. Ward's recommendations before discussing further options, including surgery. Militana Aff. ¶ 34.

Defendant Dr. Stephen Herrick, who is a clinical psychologist and not a medical doctor, was appointed acting director of the VCBR in August, 2009. Herrick Dec. ¶¶ 1 - 2. In that capacity, Dr. Herrick had no direct clinical responsibility for the residents of VCBR, and his role was purely administrative in nature. Herrick Dec. ¶ 2. The medical doctors at VCBR made medical treatment decisions for the residents of the facility, and Dr. Herrick relied on their professional opinions. Herrick Dec. ¶¶ 4 - 5. As a clinical psychologist, Dr. Herrick does not have the authority under Virginia law to prescribe medication. Herrick Dec. ¶ 10. In August 2010, Dr. Herrick left VCBR to return to his former position of Director of Piedmont Geriatric Hospital. Herrick Dec. ¶ 1.

During his tenure at VCBR, Dr. Herrick's role in plaintiff's case was limited to participation in the VCBR internal complaint process. Herrick Dec. ¶ 6. When informal complaints were denied and the denials appealed, Dr. Herrick and his staff would investigate the claims and respond to the resident. Herrick Dec. ¶ 7. Dr. Herrick reviewed plaintiff's administrative claims in May and July, 2010, and determined in both instances that plaintiff had received adequate care. Herrick Dec. ¶¶ 8 - 10, Att. 2 - 3. After leaving his position at VCBR in August, 2010, Dr. Herrick had no further knowledge of plaintiff's complaints or medical care. Herrick Dec. ¶ 1.

## II. Motions to Dismiss

Both defendants have moved to dismiss plaintiff's claims on the ground that plaintiff

alleges that his rights under the Eighth Amendment were violated, but because plaintiff is civilly committed the Eighth Amendment does not apply. Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a motion to dismiss should be granted, the alleged facts are presumed true and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Defendants are correct that the Eighth Amendment is not the proper vehicle to challenge the conditions of civil commitment, and that such claims instead are governed by the Due Process Clause of the Fourteenth Amendment. See Youngberg v. Romeo, 457 U.S. 307, 325 (1982). Nevertheless, "the legal standard employed for civil commitment claims under the Due Process Clause is largely the same as that used in analyzing prisoners' Eighth Amendment claims." Hicks v. James, 255 Fed. App'x 744, 748 (4th Cir. 2007). Indeed, the Fourth Circuit recognizes that the due process rights of an unconvicted detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. See Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir. 2005). Because it is readily apparent that both defendants are entitled to judgment on the merits regardless of whether this civil action is analyzed as brought pursuant to the Eighth Amendment or under the Due Process Clause, in the

interest of judicial economy the Motions to Dismiss will be denied, in favor of proceeding to consideration of the Motions for Summary Judgment.

### III. Motions for Summary Judgment

#### A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp.,

8

759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### B. Analysis - Dr. Militana

Defendant Dr. Militana is plainly entitled to the summary judgment he seeks on plaintiff's claim of deliberate indifference to plaintiff's serious medical needs. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Thus, a plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Importantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer,

528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

A condition is sufficiently serious to merit constitutional protection if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Here, where plaintiff alleges that his lower back pain is severe, his condition apparently is sufficiently serious to satisfy the first element of an actionable Eighth Amendment claim. Nonetheless, plaintiff's claim fails on the second element of an Eighth Amendment cause of action, because the evidence belies any suggestion that Dr. Militana was deliberately indifferent to plaintiff's needs. The chronology outlined above demonstrates that plaintiff was seen on a regular basis by Dr. Militana, and that Dr. Militana conscientiously treated plaintiff in an attempt to manage his pain. In fact, from May, 2010 through June 10, 2011, Dr. Militana saw plaintiff over 35 times. During the course of his treatment by Dr. Militana, plaintiff was prescribed a number of various medications, including several pain relievers. Plaintiff received physical therapy, was referred to at least two outside specialists, had at least one MRI, received an egg crate mattress to make sleeping more comfortable, and was being considered as a possible candidate for surgery. It is apparent at this juncture that, distilled to its essence, the sole basis of plaintiff's claim is Dr. Militana's refusal to prescribe plaintiff's drug of choice, Oxycodone. The record makes it clear, however, that Dr. Militana's decision in that regard was motivated by his considered opinion as a prescriber that the risks of such a "highly addictive" narcotic posed "significant risk" to plaintiff. Militana Aff. ¶ 2. Indeed, Dr. Ward, the MCV neurosurgeon to whom plaintiff was referred, also did not recommend long-term narcotic use to alleviate plaintiff's pain. Militana Aff. ¶ 28. In other words, plaintiff's claim against Dr. Militana amounts to no more than a disagreement over the course of treatment for his back pain, which

as a matter of law does not support a cause of action for violation of the Eighth Amendment. Wright, 766 F.2d at 849;   Russell, 528 F.2d at 319;   Harris, 761 F. Supp. at 414.

Under these circumstances, defendant Dr. Militana has met his burden as the party moving for summary judgment to show that he is entitled to judgment as a matter of law on plaintiff's claim of deliberate indifference. Celotex, 477 U.S. at 322 - 23.  In his "return response" to defendant's motion, plaintiff makes a number of conclusory accusations against Dr. Militana.  For example, plaintiff opines that Dr. Militana's refusal to continue to prescribe "expensive" Oxycodone was motivated by a "greedy quest for bonus money for cutting cost due to budgetary concerns."  Plaintiff argues that Dr. Militana is not a pain specialist, as allegedly was the physician who originally prescribed Oxycodone for plaintiff.  In plaintiff's view, the issue of whether Oxycodone is addictive is "moot."  Plaintiff also argues that the withdrawal of Oxycodone has caused him to suffer extreme pain and become unable to live a normal life, and he asserts that the other medications Dr. Militana prescribed did not help him and actually made him worse. Plaintiff asserts that Dr. Militana's "own misguided cost cutting budgetary concerns clouded his mind to follow administrative advice over good sound medical practice," which in turn caused Dr. Militana to violate plaintiff's Eighth Amendment rights and to commit malpractice.

Plaintiff has also filed exhibits in support of his position.  One exhibit, which is unsworn, purports to consist of statements by employees at VCBR concerning their observations of plaintiff.  On March 23, 2010, Therapist A. Beasley observed plaintiff "grunting loudly and slowly walking down the building 2 hallway while holding onto the rail."  Plaintiff stated that he was in pain because his narcotics had been discontinued, and he wanted the "inhumane" treatment to stop.  The writer asked plaintiff if he had been to medical, and plaintiff replied that

was where he was coming from. He added that he was unable to attend group because he could not sit on the plastic chairs, and he needed a wheelchair. The following day, Treatment Associate D. Rollins wrote that plaintiff wanted the following information documented for future purposes. Plaintiff expressed concerns that the new medical doctor took him off his medication for chronic back pain, and he was missing group because of the pain in his back. Dkt. 34, Ex. A.

Plaintiff's second exhibit is a copy of a statement by Reginald T. Dye, Regional Advocate, memorializing a telephone conversation with plaintiff. According to the memo, plaintiff explained that both a previous medical doctor at VCBR and an outside pain specialist had concurred that he needed Oxycodone, but the new medical doctor had made the decision to remove plaintiff from the drug and had been gradually reducing his dosage. Plaintiff stated that he was experiencing great pain as a result, and was unable to attend group sessions. Plaintiff stated he had never abused his pain medication, and asserted that it was the only medication that controlled his pain. Dkt. 34, Ex. B.

Plaintiff's third exhibit is a copy of a Consultation Report by Dr. G. S. Bhulier dated April 1, 2010, in which the doctor noted lab findings of "recent MRI lumbar spine shows mild disc herniation." Dkt. 34, Ex. C (emphasis in original). In the section of the report titled "tentative diagnosis," Dr. Bhulier wrote, "Chronic low back pain with radicular symptoms. Malingering." Id. (emphasis added).

Plaintiff's fourth exhibit is his own statement dated July 6, 2010, in which he used hyperbolic language to describe his "unbearable excruciating crippling pain" and reiterated that an outside pain specialist had "confirmed [his] need for Oxycodone." Dkt. 34, Ex. D.

Considering the evidence in the light most favorable to plaintiff, none of his exhibits, either alone or in concert, are sufficient to create a genuine issue of material fact as to the

constitutionality of the medical care he received for his back pain. Cf. Anderson, 477 U.S. at 248. In fact Exhibit C actually includes Dr. Bhulier's "tentative diagnosis" that plaintiff was "malingering." At best, plaintiff's exhibits do no more than illustrate his subjective belief that Oxycodone was the appropriate medication to treat his back pain. As discussed above, plaintiff's opinion demonstrates nothing more than his disagreement with defendant Dr. Militana over the appropriate course of treatment for his back pain, and because such a disagreement will not support a claim of deliberate indifference, the entry of summary judgment is not precluded. Id. In short, it is now apparent that no material facts are genuinely disputed, and the evidence as a whole could not lead a rational fact finder to find for plaintiff. Cf. Matsushita, 475 U.S. at 587. Accordingly, Dr. Militana is entitled to the entry of summary final judgment in his favor on plaintiff's claim of deliberate indifference to plaintiff's serious medical needs.[1]

### C. Analysis - Dr. Herrick

Dr. Herrick is also entitled to the entry of summary judgment in his favor, because there is no legal theory under which he can be liable for the harm plaintiff asserts. According to the uncontroverted evidence, Dr. Herrick is not a medical doctor, and played no part in treating plaintiff's chronic back pain. In this circuit, it is settled that "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were

---

[1] To the extent that plaintiff alleges that Dr. Militana was negligent and committed malpractice, such claims must be brought in a state tort action. Where § 1983 claims over which a district court otherwise would have original jurisdiction are subject to dismissal, there remains no basis to exercise supplemental or pendant jurisdiction over state tort claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); White v. Ammar's, Inc., 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendant jurisdiction were properly dismissed.").

indifferent to the prison physicians' misconduct." Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996), citing Miltier, 896 F.2d 848. As there is no suggestion that Dr. Herrick interfered with Dr. Militana's treatment of plaintiff or was indifferent to medical misconduct, he can have no direct liability for any deficiencies in the medical treatment plaintiff received.

Nor has plaintiff demonstrated an actionable claim of supervisory liability against Dr. Herrick. Supervisory officials may be held liable only in certain circumstances for constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Here, plaintiff offers no facts demonstrating that Dr. Herrick had actual or constructive knowledge that subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to plaintiff. Therefore, plaintiff has stated no claim for § 1983 relief predicated on supervisory liability against Dr. Herrick.

The uncontroverted evidence submitted by Dr. Herrick demonstrates that the only action

he took in the events giving rise to plaintiff's claim was his participation in the VCBR internal complaint process. Inmates do not have a constitutionally protected right to a grievance procedure, and no liability exists under § 1983 for a prison administrator's response to a grievance or appeal. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Brown v. Va. Dep't Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009). Because Dr. Herrick cannot be liable to plaintiff based on his responses to plaintiff's internal grievances at VCBR, he has met his burden to show that he is entitled to judgment as a matter of law on plaintiff's claim. Celotex, 477 U.S. at 322 - 23. For these reasons, summary final judgment will be entered in his favor.[2]

### IV. Plaintiff's Motion to Appoint Counsel

Plaintiff has moved for the appointment of counsel in this proceeding. A court may request an attorney to represent an indigent plaintiff proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1); however, the Fourth Circuit has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Because it is now apparent that plaintiff has made no showing of "exceptional circumstances" in his case that would warrant appointment of counsel, the motion will be denied.

### V. Conclusion

For the foregoing reasons, defendants' Motions to Dismiss will be denied, their Motions

---

[2] Both defendants argue in the alternative that they should have qualified immunity from liability to plaintiff for the harm plaintiff asserts. Because defendants have established their entitlement to judgment as a matter of law on plaintiff's claim of unconstitutional denial of medical care, it is unnecessary for the Court to address their arguments on the question of qualified immunity.

for Summary Judgment will be granted, and summary final judgment will be entered in their favor. Defendant Dr. Militana's Third Motion for Extension of Time to File Response will be denied as moot, and plaintiff's Motion to Appoint Counsel will be denied. An appropriate Order shall issue.

Entered this __1st__ day of __March__ 2012.

Alexandria, Virginia

/s/ JMB for Judge Lee
Leonie M. Brinkema
United States District Judge